## James Irwin, for the use of John Simpson *against* William Reed and John M'Mahon.

Depositions of witnesses, who became interested at the time of trial, and were in full life, refused in evidence.

APPEAL from the decision of the Circuit Court of Northumberland county.

The cause was tried at Sunbury, on the 11th October 1804, before SHIPPEN, late C. J. and BRACKENRIDGE, J., and a verdict passed for the defendants. The court overruled a motion for a new trial.

The ground of appeal was, that the court had refused in evidence, the depositions of Jeremiah and Jesse Simpson, taken under a rule of court pending the suit, during the life time of their father, John Simpson, the *cestui que use.* They had at the time of trial become interested under their father's will, were appointed his executors, and were made parties to the suit.

*Messrs. C. Smith and C. Hall on the part of the plaintiff contended, that their testimony ought to have been [*513 received. They were wholly free from interest when they were sworn. The objection of their being sons went merely to their credibility. The act of God ought not upon any reasonable principle to prejudice the true merits of the suit; and courts of justice were now disposed to let in all possible light on the trial. They were clearly witnesses in a court of equity. 2 Vern. 699. 2 Atky. 615. 2 Vez. 40. 1 Wms. 289. And the rule at law ought to be the same, where the consideration of a note, as was the present case, was attempted to be inquired into. In a cause at *Nisi Prius* in York county, such depositions were allowed on the motion of our adversary.

4 YEATES—31

[Finney's Adm'r in Error *v.* Harbeson, Finney et al.]

Mr. Duncan for the defendants insisted, that this court would govern themselves by the plain rules of law, and not adopt chancery decisions contrary thereto. These depositions were taken to be read in evidence, in case of their death, absence out of the state, or inability to attend on the day of trial. None of these events had arisen ; on the contrary, the witnesses then were present in court attending the trial as parties. On this ground their depositions could not be read. Nor could they have been personally examined. It was a decisive objection to them, that they were parties, and liable to costs in the first instance. 3 East 13. Where a suit had been brought in the name of one, who afterwards became bankrupt, though the assignees had given security for costs, the bankrupt was obliged to release his share of the surplus before he could be sworn. 4 Dall. 137. It is fully settled, that a guardian, or *prochein amy*, instituting a suit, could not be a witness. It appears by express decisions, that such depositions are not admissible in a court of law. See 2 Ld. Raym. 1009. 1 Salk. 286. 2 Salk. 555, 691. 1 Stra. 101. 5 Mod. 9, 163, 277. 2 Wms. 564. 2 Bac. 305. Espin. 756. Peake's Compend. 39.

By THE COURT. The testimony offered was clearly inadmissible as evidence, under adjudged cases, for the reasons which have been offered by the counsel for the defendants. We are obliged to proceed by the common law rules of evidence, however hard they may appear in a particular case. Upon the same principle of chancery practice, that these depositions were urged on the court, a party may insist on examining the defendants upon oath, and fully purge his conscience. This has never been done in Pennsylvania, and we cannot now set the precedent.

Judgment affirmed.

Cited and approved in 17 S. & R. 412.