## AMERISCOGGIN BRIDGE *vs.* BRAGG.

It is not necessary to show an acceptance of the provisions of a charter by record. The acts and doings of the corporators under such charter are sufficient evidence from which an acceptance may be presumed.

A license to build and maintain a bridge on another's land may be proved by parol, and is not such an easement or interest in land as to be within the statute of frauds.

Such license is either irrevocable, or can only be revoked on payment of all expense and damage.

Where an individual is shown to have been a stockholder in a bridge built by a corporation, which bridge went to decay, and a new one was built, it is not sufficient evidence that the interest of the stockholder has ceased that he has been called upon for no payment towards the new bridge, and supposes his stock to have been sold. Such a fact must be clearly shown, before he can be a witness in a suit where the corporation is a party.

Where the court ordered a new indorser to be furnished, in a suit appealed from a justice, and the indorsement was made on the certified copy of the writ brought up with the papers—*Held*, that such indorsement bound the individual to liability as indorsee, and disqualified him as a witness in the suit.

Where his deposition was taken before such indorsement, it was holden to be inadmissible.

TRESPASS, brought before a justice of the peace, and appealed to the court of common pleas by the defendant, for breaking open and damaging a toll-gate of the plaintiffs', standing at the end of the Ameriscoggin bridge, in Errol, and breaking and destroying the lock on the gate, on the 28th day of March, A. D. 1837.

The defendant plead in bar, 1. That there is no such corporation authorized to sue ; and tendered an issue to the country, which was joined.

The defendant plead, for a second plea, that he owned the land upon which the bridge was situated ; and that the plaintiffs, without license and against his consent, erected the bridge upon his premises, which obstructed his passage ; and he did the act complained of, as he had by law a right to do. To which plea the plaintiffs replied, that they entered on the premises with a license from the defendant, in October, 1828, to erect and continue a toll bridge on said premises. The defendant rejoined, that no such license was given, and took issue to the country, which was joined by the plaintiffs.

To prove the first issue, the plaintiffs offered in evidence a duly certified copy of a charter, granted by the legislature of this state December 23, 1816. By the sixth section of this charter it is provided, that if the bridge should not be completed and made fit for passing within four years from the passage of the act, then the same should be null and void. Whereupon the defendant contended, and the court ruled, that the plaintiffs must show that said bridge was completed and made fit for passing within the time specified in the sixth section. To prove which the plaintiffs introduced one Edmund Chamberlain, who, being objected to, testified, in answer to the defendant's interrogatories, that he was one of the original grantees in the charter, and that he originally owned three shares in the bridge—that the original bridge had gone to decay, and a new bridge had been built—that he paid nothing on the shares towards the rebuilding of the bridge—that he supposed the shares were sold therefor, and that he claimed nothing by reason of said shares. Whereupon the court permitted him to testify ; and the witness did testify, that he was one of the committee to accept the bridge originally built, the same being built on a contract, but was unable from his recollection to fix the time of the completion of the same. Whereupon the plaintiffs put into

the hands of the witness a paper signed by said Chamberlain and the other committee, from which the witness was enabled to fix the time of the completion of the bridge, fit for passing, within the period prescribed by the sixth section of the charter.

There was no evidence of a meeting of the proprietors and an organization under the charter. To prove the license under the second issue, the plaintiffs offered parol evidence. The defendant objected, and insisted that it was necessary the license should be in writing. But the court overruled the objection, and admitted parol evidence to prove that fact. The plaintiffs then offered the deposition of one Eliakim Davis, to the admission of which the defendant objected, on account of interest, and its irrelevance. It appeared that the deposition was taken prior to the term of the common pleas court, in 1837. It also appeared that one John Whittemore was the indorser of the original writ in this action; but at the November term of the court of common pleas, in 1837, it was ordered that a new and sufficient indorser should be furnished in ninety days; and within that time the plaintiffs procured Davis to indorse his name on the copy of the original writ that came up from the justice, the said Whittemore continuing the indorser of the original writ. Whereupon the defendant contended that the deposition of Davis was not admissible evidence in the cause. But the deposition was permitted to be used.

Davis testified that the bridge had so far decayed in 1834 that it was not safe for the passing of travellers—that it was rebuilt in 1836, and the defendant labored a few days upon it, and that he acted as a director of the corporation until the first of January, 1836. After the bridge was built, deeds of shares were made out by the collector, and the defendant refused to take his deed; and then, for the first time, claimed pay for the privilege of the bridge being on his land. The defendant owns the land on both sides of the river on which the bridge is situated.

The defendant contended, that if any license had been given the plaintiffs to erect the bridge, it was revoked in 1836, and also at the time of the trespass alleged ; and requested the court to charge the jury that he had a right to revoke the license at either of said times. But the court declined so to charge ; but did charge the jury, that if they found that the defendant did consent to the erection of the bridge, and that the plaintiffs, in pursuance thereof, did erect and maintain the bridge till March, 1837, the defendant could not revoke the license and destroy the property.

The defendant also requested the court to charge the jury that the plaintiffs had offered no sufficient evidence of a corporation, or that the charter had been accepted, or that there was any organization under the charter. But it being in evidence that a bridge was built within the time specified in the sixth section, and kept up and maintained by persons under the corporate name, and rebuilt in 1828, and toll taken to March, 1837, and that the defendant acted as one of the directors of the bridge as late as January, 1836, the court instructed the jury that it was competent for them to infer from the evidence that the proprietors did organize under the charter, and accept the provisions thereof ; and, there being no evidence to the contrary, that they still existed as a corporation.

A verdict was rendered for the plaintiffs ; and the defendant moves to set the same aside, on account of the admission of incompetent testimony, and the misdirection of the court in matters of law.

*Young*, for the defendant, contended, 1. That as against a defendant claiming a right, and not a mere stranger and trespasser, the plaintiffs must prove the existence of the corporation, by charter, and by a legal organization under it ; and cited 6 *Verm. Rep.* 315 ; 8 *Ditto* 445 ; 9 *Mass. R.* 501 ; 14 *Johns.* 416 ; 8 *Ditto* 378.

2. That a license cannot be proved by parol ; and if the

license is for a temporary purpose, such as for building a bridge, dam, &c., it expires with the decay of such bridge or dam. 3 *Kent's Com.* 452–3, *and notes ;* 6 *Verm. R.* 338 ; 11 *Mass. R.* 533, *Cook* vs. *Stearns ;* 2 *Stark. Ev.* 342, *and note ;* 1 *Phil. Ev.* 355.

3. Chamberlain, whose deposition was received, was inadmissible as a witness, as he was a stockholder originally in the corporation, and there was no competent evidence that he had been divested of his rights as such. There is nothing to show but the bridge may have been rebuilt from the funds of the corporation.

Davis was also incompetent as a witness, on the ground of his liability as indorser, which relates back to the commencement of the suit. The indorsement on the copy of the writ may be enforced against him, either under the provisions of the statute, or as an independent contract.

*Fletcher & Wells*, for the plaintiffs, contended that the charter, together with the acts and proceedings under it, and the evidence of the erection of a bridge within the time limited in the 6th section, was conclusive evidence of an organization under the charter, and an acceptance of its provisions. *Angell & Ames on Corp.* 128 ; 7 *Pick.* 344, *Charles River Bridge* vs. *Warren Bridge ;* 12 *Wheat.* 71, *U. S. Bank* vs. *Dandridge.*

The ruling of the court, admitting parol evidence to show a license to erect a bridge, and the instructions to the jury upon the subject of revocation, are fully sustained by the decision in *Woodbury* vs. *Parshley,* 7 *N. H. Rep.* 237, *and cases there cited.*

The testimony of Chamberlain was admissible, for the reason that he had abandoned his shares in the corporation many years since, and claimed nothing under them. Besides, it appears by the charter that all assessments were to be made upon the shares; and in case of non-payment the same were to be sold ; and as the bridge was rebuilt, and no payments

were made by Chamberlain, the necessary inference would be that the shares were sold.

There is no interest which can exclude the testimony of Davis, except on the ground of his being indorser of the plaintiffs' writ; and he can only be liable under the fourth section of the act regulating the jurisdiction of justices of the peace, or the tenth section of the act relating to civil process. Both acts require that the original writ should be indorsed before service. In *Farnham* vs. *Bell*, 3 *N. H. Rep.* 72, it is expressly decided that a *scire facias* is bad on demurrer that does not allege that the defendant indorsed his name upon the original writ before it was served. In this case the indorsement by Davis was on the certified copy of the writ from the justice, brought up by appeal, and not on the original writ, and he is not, therefore, liable as indorser. Farther: at the time of giving his deposition Davis was wholly disinterested, and we do not see how any interest which may have subsequently accrued could exclude his testimony.

UPHAM, J. There is no evidence in this case, except what appears from the testimony of the witnesses Chamberlain and Davis, and the copy of the charter granted to the plaintiffs by the legislature.

Exceptions are taken, both as to the competency of this testimony to sustain the issues raised by the pleadings, and to the admissibility of the witnesses, on the ground of interest.

It is contended that when suit is brought by a corporation against a person claiming a right, it is necessary, under a plea that there is no such corporation, to show an act of incorporation, and an organization under it, by record; and some authorities are cited to this point. But such is not the general rule upon this subject. It is not essential to the taking effect of an act of incorporation, that the records of the corporation should show a formal acceptance of the act by the per-

sons incorporated. 14 *Pick. R.* 63, *Russell* vs. *McLellan ;* 2 *Fairf.* 227, *Trott* vs. *Warren.* A charter and an acceptance are presumed, not only from lapse of time, but from the continued exercise of corporate powers which pre-suppose their existence. 12 *Wheat.* 71, *U. S. Bank* vs. *Dandridge.*

In the case before us it was in evidence that a bridge was built within the time specified in the sixth section, by persons claiming to act under the charter, and that this bridge was kept up and maintained by persons under the corporate name, until it went to decay, when it was rebuilt by them, in 1828, and toll taken till March, 1838, and that the defendant acted as one of the directors of the bridge as late as January, 1836. This evidence was abundantly sufficient and competent to show an acceptance of the charter, and an organization under it. There is no good foundation for any rule of law requiring a formal acceptance of a charter. The acts and proceedings of the corporators under it are as conclusive evidence of such fact, as any record evidence which can be produced.

It is contended farther, that the license to erect a bridge on the defendant's land cannot be shown by parol testimony, on the ground that it is a permanent easement in land, with a right at all times to enter and enjoy it, and that such an easement is within the statute of frauds, and can be sustained only by evidence in writing. The distinction between a privilege, or easement, carrying an interest in land, and requiring a writing within the statute of frauds to support it, and a license which may be by parol, is said by Chancellor Kent to be quite subtle, and that it is difficult in some of the cases to discern a substantial difference between them. 3 *Kent's Com.* 452. A license to an individual to do an act beneficial to him, but requiring an expenditure upon another's land, is held not to be revocable after it has once been acted upon. Such a license is a direct encouragement to expend money ; and it is said it would be against conscience to revoke it as soon as the expenditure begins to be beneficial.

A license to erect a dam on another's land is held to be of this description. 17 *Serg. & Rawle* 383, *Hepburn* vs. *McDowell;* 7 *N. H. Rep.* 237, *Woodbury* vs. *Parshley.* A license to erect a bridge for the taking of toll is clearly distinguishable from a mere easement of passing and repassing; and we think when it is once executed it is either irrevocable while the bridge continues; or, if revocable at all, can only be so on full compensation for all expenditures made and damage occasioned by such revocation.

Such a license may undoubtedly terminate by the decay of any erection under it; and it would have terminated in this case, or might have been terminated by the defendant, when the first bridge had become useless, had he so elected, or had the license been so limited. But the issue tendered and joined is, that the plaintiffs had license to erect and continue a toll bridge on the premises; which issue has been found for the plaintiffs. The license then extends as clearly to the erection of the new bridge as of the old, and no exception can be taken on this ground.

We are of opinion, therefore, that the evidence submitted was competent to sustain the points in issue, and that the ruling of the court in this respect was correct; but the exception as to the admissibility of the witnesses is, we think, well taken.

It appears from the case, that at the November term of the common pleas it was ordered by the court that a new and sufficient indorser of the writ should be furnished within ninety days; and within that time the plaintiffs procured the indorsement of Davis, the witness, upon the back of the copy of the writ which came up from the justice. This we hold to be a sufficient indorsement to subject him to all the liabilities as indorser from the commencement of the suit.

Though the indorsement is not upon the original writ, it is upon the copy under which the suit is proceeding in court, and constitutes a contract voluntarily entered into to incur a conditional liability as to costs; and the indorsement is pro-

cured on the express motion and act of the defendant. This contract may be upon a copy of the writ, or by an instrument entirely distinct either from the copy or writ. In either case it imposes, under such circumstances, such a personal liability to the defendant that the individual cannot object to its enforcement, and is clearly disqualified as a witness.

The deposition of Davis was taken prior to his incurring this liability as indorser ; but the deposition is a mere substitute for the personal attendance and testimony of the witness ; and we know of no case where the deposition may be received as evidence on a trial; and yet at the same time the testimony of the witness who gave it, and who is present at the trial, can be rejected as incompetent, on the ground of interest. 2 *Stark.Ev.* 754 ; 4 *Yeates* 512, *Irwin* vs. *Reed & a.*

There was no occasion to insist on the admission of the deposition, under the circumstances of this case, for on motion to the court permission would have been granted for leave to obtain a new indorser, and the objection taken to his testimony might have been readily obviated. We think the testimony of Davis should not have been received while standing in the relation of indorser.

We are also of opinion that Chamberlain was not admissible as a witness, for the reason that he was one of the original grantees of the charter to the plaintiffs, and a stockholder in the corporation ; and there is no sufficient evidence that his interest in the corporation has ceased. The facts in the case do not by any means show that he may not yet have a legal and valid interest in the bridge now constructed. His situation in this respect must be clearly shown, and not be left, as it now is, a matter of doubtful inference. The verdict must, therefore, be set aside, and a

*New trial granted.*