# MERRIMACK.

## JULY TERM, 1851.

BATCHELDER *v.* SANBORN.

22 325
66 352

The account books of a party, whether verified by oath or not, are inadmissible to prove any matter collateral to the issue of debt and credit between the parties.

They are competent for the plaintiff, only to prove the account which is the foundation of the suit; and for the defendant, only to prove a set-off against the claim of the plaintiff.

Where A brought a suit against B for flowing his land, and B justified the same on the ground that he had a license from A to flow; and, among other evidence to show the license, introduced a witness who testified that he saw the plaintiff at work on the defendant's dam, by which the flowage was caused, and then, for the purpose of establishing the fact of the labor and the time at which it was done, offered his book of accounts wherein he had credited the plaintiff with a day's work done upon the dam. *Held*, that the book was incompetent for the purposes for which it was offered.

CASE, for flowing the plaintiff's land. The defendant justified the building and maintaining his dam in the manner complained of in the plaintiff's declaration, by virtue of an alleged license from the plaintiff.

No direct proof of a license was offered; but the defendant introduced evidence tending to show that the plaintiff lived in the neighborhood, and that he was repeatedly at the place of the mill while the dam was building; that he expressed himself pleased that the farm on which the mill privilege was, had fallen into the hands of the defendant, who was, as he said, able to erect a good mill, which would be a benefit to him and his neighbors; that he saw how the dam was being built and made no objection; that the second season after it was built, the dam was

carried away by a freshet, and the plaintiff worked one day in repairing the dam, and that for ten or twelve years after, he had never made any objection to the dam, or the height at which the water was kept, and that he had never forbidden the defendant to raise the water, or given him any notice not to flow his land. And after offering a witness to prove the fact that the plaintiff worked one day upon the dam, the defendant offered in evidence his book of accounts to establish the fact and the date of such labor. The book was an ordinary book of accounts, pretty well kept, in ledger form; it contained a credit to the plaintiff as follows: "April 21, 1831, By one day's work on grist-mill dam, 50 cents." The entry appeared to be entered with other credits in the order of date.

The evidence was all excepted to, but admitted. The jury having returned a verdict for the defendant, the plaintiff moved to set the same aside and for a new trial for supposed error in the ruling of the Court. And the questions arising upon the motion, were transferred to this Court for determination.

*Pierce & Minot*, and *Butters*, for the plaintiff.

*Bellows*, (with whom was *Norris*,) for the defendant.

I. The proof that the plaintiff was present while the dam was being built; that he encouraged the work by expressing his satisfaction; that he repeatedly saw how it was being done, and made no objection; that he even worked on the dam himself, and, for ten or twelve years after it was completed, made no objection to the dam, is ample justification for the finding of the jury that there was a license. Angel on Watercourses, 325, 369; *Johnson* v. *Lewis*, 13 Conn. Rep. 303; *Gray* v. *Bartlett*, 20 Pick. 193; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. Rep. 370; *Eaton* v. *Rice*, 8 N. H. Rep. 379; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. Rep. 102; 1 Greenl. Ev. 262, 265; Matt. Pre. Ev. 164; 6 Ad. & E. 469; 11 East, 56.

II. In regard to the admission of the entry in the book, it appeared that the book was kept in the ordinary form, containing entries in the order of their date. No exception was taken that

Batchelder *v.* Sanborn.

the entries were not made at the times they purported to be; and it stands upon the ground of an entry made in the usual course of business, contemporaneous with the labor which was the subject of it. The performing of the labor by the plaintiff was proved *aliunde*. We claim that the entry was admissible on the ground that it is a part of the *res gestæ* and the natural concomitant of the act. 1 Stark. Ev. 47, 48; 1 Greenl. Ev. 144; *Patteshall* v. *Turford*, 3 B. & Adol. 890; *Poole* v. *Dicas*, 1 Bing. N. C. 654; *Digby* v. *Stedman*, 1 Esp. 328. The fact that the entry was made by the defendant only goes to the credit, not the competency. The case of *Digby* v. *Stedman*, is directly in point, and is cited and approved in Greenleaf's Evidence and other treatises on evidence. The facts in that case were much like the present. See also *Higham* v. *Ridgway*, 10 East's Rep. 109; 2 Smith's Leading Cases, 183; *Doe* v. *Robson*, 15 East, 32; *Augusta* v. *Windsor*, 19 Maine Rep. 317; *Nichols* v. *Webb*, 8 Wheat. Rep. 337; 1 Stark. Ev. 319, 320, and note, 3d Am. Ed.

This doctrine is not in conflict with *Woodes* v. *Dennett*, 12 N. H. Rep. 510, and *Little* v. *Wyatt*, 14 N. H. Rep. 23. These cases go only to the question how far books of account, supported by the oath of the party, are admissible. The question was not when a mere entry can be read in evidence, but it involved the admissibility of a party's own testimony in corroboration of it. In those cases no attempt was made to determine when entries *as* entries may be read in evidence. And yet they unquestionably may be, in a great variety of cases; as in the case of entries by a third person against his interest, who is since dead. 1 Greenl. Ev. 143. So, where made in the discharge of official duty. 1 Greenl. Ev. 134. So, as to entries by deceased notaries. 2 Cowen & Hill's Notes to Phil. Ev. 676.

In *Woodes* v. *Dennett* and *Little* v. *Wyatt*, the only object was to determine the extent of the exception allowing a party to testify in his own cause upon the ground of necessity. The application of this exception to the general rules of evidence, modified as it has been in our practice, is all that was attempted in those two cases. And it may now be considered as settled in

this State, that the entry in a shop book with the testimony of the party, is admissible only in suits to recover for the thing which was the subject of the entry. Beyond this these cases do not go.

Again, the entry was against the interest of the party making it, and though he is not dead, yet he cannot testify. It was clearly against his interest, for it charged himself with the price of the labor and so is admissible, unless affected by the fact that it was made by the defendant. 1 Greenl. Ev. 142. *Middleton* v. *Milton*, 10 Barn. & Cress. 317.

The fact that the entry was made by the defendant, goes to the credit only; and his inability to testify puts it upon the same ground as if he were dead, as we say. In fact it is not clear that in such cases it is necessary to show that the party is dead or unable to testify. *Doe* v. *Cartwright*, 1 Smith's Leading Cases, 139. The case of *Digby* v. *Stedman*, 1 Esp. 328, shows, that an entry by the party himself stands upon the ordinary footing.

EASTMAN, J. Most of the evidence offered by the defendant was competent to be considered by a jury to show a license. *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. Rep. 102. The principal question presented by the case, arises upon the admission of the defendant's book of accounts. This question has heretofore undergone a pretty full discussion in the case of *Woodes* v. *Dennett*, 12 N. H. Rep. 510, and *Little* v. *Wyatt*, 14 N. H. Rep. 23. But the counsel for the defendant has cited a number of authorities and presented some views that we will examine.

The facts upon which the question arises are brief, and may be stated as follows. The plaintiff brings his action to recover damages of the defendant for flowing his land by reason of a certain dam. The defendant admits the flowing, but justifies it by attempting to show a parol license from the plaintiff, to raise the dam and flow the land. Among other evidence tending to show the license, he proved by a witness that the plaintiff worked a day on the dam; and, having done this, offered in evidence his own book of accounts to establish the fact, and the date of the

Batchelder *v.* Sanborn.

labor. An examination of the book shows a day's work credited to the plaintiff as done on the dam, and also the time at which it was done. The oath òf the defendant was not offered to sustain the book. Was the book competent evidence · to establish the facts for which it was introduced ?

It is contended that it was admissible as part of the *res gestæ.* But this position, we think, cannot be sustained. The admission of the statements of parties, on the ground that they go to form a part of the transactions, is oftentimes of doubtful competency. The doctrine that is sometimes promulgated by general writers upon the subject, will be found, upon a close examination, to be but feebly sustained by the authorities upon which it is predicated. Although the principle, when circumscribed by proper restrictions, is a correct one, yet we are not disposed to extend it beyond its legitimate sphere, nor beyond the doctrine of our own reports. If evidence of an act done by a party be admissible, his declarations made at the time, and tending to elucidate or give a character to the act itself, and which may derive credit from the act itself, will be admissible as part of the *res gestæ. Sessions* v. *Little,* 9 N. H Rep. 271. Entries in books are regarded as the statements of the person making them ; and if the act done by the party is competent, then entries in his books, made by him at the time of the act, and tending to elucidate and give a character to it, and which may derive credit from the act itself, may be admitted. To come within the principle, as it is ordinarily presented, the act performed and the declaration or entry made, should be done by the same person. The declaration should be made by the party performing the act, and so made as to elucidate it. The declaration and act should not only be concomitant but should spring from the same source.

Applying this view of the subject to the facts before us, the defendant's book could not be admitted. If the witness is to be believed, the act done is the labor performed by the plaintiff on the defendant's dam, while the entry made, is the credit given by the defendant.himself in his own book. The labor is the act of one person, while the declaration or entry is that of another, and for aught that appears, made without his knowledge. If a

28 *

witness should testify that at the time the dam was going up he saw the plaintiff at work upon it, it could hardly be contended that the declaration of the defendant, made at that time, but not in the presence or hearing of the plaintiff, stating that the plaintiff was at work for him for fifty cents a day on his mill-dam, could be competent evidence to establish the fact of his working there and the time when the labor was performed. If so, parties can easily manufacture almost any evidence by proving their own statements or their own entries, and showing them connected with the acts of their antagonists. And yet we do not discover any difference in principle, between the point presented in the case before us and the supposition which we have made.

But we will examine the authorities cited to sustain the position. Those from the text-books are mainly based upon the decisions referred to by the defendant's counsel and need not be repeated. We will, however, take a brief view of the reported cases which are cited.

*Patteshall* v. *Turford,* 3 Barn. & Adol. 890, was where the party was permitted to prove a notice to quit certain premises, by showing that an entry of the service of notice was made by the attorney who made the service, upon a duplicate contemporaneous with the alleged service ; the attorney being dead, and it being shown that such was his usual course of business. The attorney was not a party to the suit nor interested in the result.

*Poole* v. *Dorcas,* 1 Bing. (New Cases,) 649, was where an entry had been made by the clerk of a notary ; and it was held that the entry of the dishonor of a bill of exchange, made in the usual course of business, at the time of the dishonor, in the book of a notary, by his clerk, who presented the bill, might be given in evidence in an action on the bill, upon proof of the death of the clerk who made the entry. Here also, neither the notary, nor the representatives of the clerk, had any interest in the result of the case.

In *Higham* v. *Ridgeway,* 10 East, 109, to which notes are added, in 2 Smith's Leading Cases, it was held that the entry in a physician's book, showing the time of the birth of a child, if it be in his handwriting and he be dead, can be received as be-

tween third parties, that is, if he himself could have been a witness if living. In regard to this case, Baron Bailey, (formerly Justice Bailey,) in *Glendow* v. *Atkin*, 1 Crompton & Meeson, Exch. Rep. 424, says, that his entry in his own note-book in the case of *Higham* v. *Ridgeway*, was as follows : " An entry by a man who is dead will be evidence as to *strangers*, if it relates to a fact peculiarly within his knowledge, if he had no interest in misrepresenting it, or if the entry charges him with the receipt of money for a third person, or imports that a debt which would otherwise be due to him, is paid."

*Doe* v. *Robson*, 15 East, 32, was where an entry in an attorney's book, made in the usual course of business, was produced to show the date of a lease, in a suit between third parties.

In *Middleton* v. *Milton*, 10 Barn. & Cress. 317, it was held that an entry made by a deceased collector of taxes in a private book kept by him for his own convenience, whereby he charged himself with the receipt of sums of money, was evidence against a surety, of the fact of the receipt of such money, in an action on a bond conditioned for the due payment of the taxes by the collector. *Bailey, J.*, said the question was, whether such an entry made by an individual against his own interest, may be evidence of the fact of the receipt of the money against a *third* party.

It will be perceived that if the collector had been living, his testimony would have been admissible to show the receipt of the money.

*Doe* v. *Cartwright*, 1 Carr. & Payne, 218, was an action between *third* persons, and the books of a collector of taxes charging himself with the receipt of money, and also of an insurance company, charging themselves with receiving money, were admitted as tending to show an occupancy of certain premises by a party.

These are the English decisions, with the exception of *Digby* v. *Stedman*, which we shall consider presently.

Of the American decisions, two cases only are cited. The first is *Augusta* v. *Windsor*, 19 Maine Rep. 317. This was *assumpsit* for supplies furnished a pauper. In the course of the

trial it became material to show at what time one Linscott had broken his leg; and it being proved that the leg was broken, that one Dr. Neal attended Linscott, and reduced the fracture, and that Neal was dead, the Court permitted the book of Neal, wherein were charges against Linscott for the services rendered, to be used, as tending to fix the time; the charges being proved to be in the handwriting of the physician.

The other case is that of *Nicholls* v. *Webb*, 8 Wheaton's Rep. 327. In that case it was held that the book of a deceased notary, proved to have been regularly kept, was admitted to show a demand of payment and notice of non-payment of a promissory note. On the particular page referred to, the Court say: "We think it a safe principle that memorandums, made by a person in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for *others*, in case of his death, are admissible evidence of the acts and matters so done."

It will be perceived that in all of these cases, the books and entries are those of *third* persons, not parties to the suit. In this respect they differ very essentially from the case under consideration. They are also made in the usual course of business, and in some instances against interest. And in every case, we believe, the person making the entry, was dead. But it is said that *Digby* v. *Stedman*, 1 Esp. N. P. Rep. 328, is precisely in point, and that the facts in that case were much like the present.

The case was this: Digby brought an action of trover for a watch against the defendants, who were watchmakers and jewellers, the watch having been left with them to be repaired. While the watch was in the hands of the defendants, the plaintiff sold it to one Murray, and he testified that he had not received it from the defendants; but they contended that they had delivered it to him. To show that they had delivered it to Murray, they produced the shopman, who testified that he himself saw the watch delivered to Murray, and the books of the defendants were introduced, wherein an entry was made of the delivery of the watch to Murray. It was in the handwriting of one of the defendants, but the witness swore that it was done in the usual

mode of making the entries, and that he had himself seen it but a short time after it had been made. The whole opinion of the Court was as follows: "Lord *Kenyon* said, that the entry in the book was brought to corroborate the testimony of the witness, who had himself seen the delivery; that the entry should regularly be in the handwriting of the witness; but where the entry was made in the handwriting of another, and the witness saw it soon after it was made, and the entry corresponded with what he had himself then observed; that such was tantamount to an entry made by himself, and was, therefore, admissible." The decision was evidently put upon the ground, that the entry was the same as though it had been made by the shopman himself. Otherwise we can hardly account for the language of Lord *Kenyon* in *Cooper* v. *Maisden*, in. the same volume of reports, where he says, that the rule of evidence is clear, that entries in the books of bankers or persons keeping books, respecting their trade or business, can only be proved by the clerks who had made the entries.

With the exception of the case of *Digby* v. *Stedman,* we are not disposed to question the correctness of the doctrine which the cases cited sustain. The doctrine of these cases is not that which is contended for in the case before us. Nor even in *Digby* v. *Stedman* was there any intention of departing from the well-established; principle in England, that a person cannot use his own books of account in a suit to which he is himself a party. The error in that case consisted in regarding the evidence as to the entry, to be tantamount to an entry by the witness himself.

The doctrine, then, which is attempted to be drawn from these authorities, by which the defendant's position is to be sustained, entirely fails, as we comprehend the cases.

In some of the American courts the same rule prevails, as that in England, and the account-books of the party are not admitted in evidence. Clerks must be employed, and the proof made by them, or the claims proved by other competent evidence. *Nolley* v. *Holmes,* 3 Ala. Rep.; *De Camp* v. *Vandgrift,* 4 Blackford's (Ind.) Rep. 272; *Owings* v. *Henderson,* 5 Gill & Johns. 134, 142; Civil Code of Louisiana, Art. 2244, 2245.

But in most of the States the books are admitted under certain rules and restrictions, which vary in the different jurisdictions. It is believed, however, that in no State are they admitted to prove collateral matters. If so, we have overlooked the decision which sanctions the rule. Books of account are admitted only from the necessity of the case, to obviate the difficulty of compelling the business community to keep clerks. They are not admissible, as between the parties, to prove independent or collateral facts. If admitted with the oath of the party, then he testifies for himself. If without his oath, then his naked statements are received as evidence, and he can readily make testimony for his case. If the book in this case was competent evidence for the consideration of a jury, from which they might find a license to flow the plaintiff's land, then the freehold of the plaintiff could be taken from him by the bare statements of the defendant.

In a recent case in the Court of Appeals of South Carolina, decided in 1846, *Gage* v. *McIlwain*, 1 Strobh. Rep. 135, it was held that the book of a shop-keeper or tradesman is only allowed to prove the account sued for, and not of any other fact which may arise collaterally in the case. So in *Mattocks* v. *Lyman*, 18 Vermont Rep. 98, decided in 1846, it is laid down that books of account are evidence only in regard to matters either of debt or credit, which positively appear upon them. These decisions have been made since those of *Woodes* v. *Dennett* and *Little* v. *Wyatt*, in our own reports.

Upon a pretty careful examination of the authorities upon the subject, and the considerations which enter into the principles decided, we cannot doubt, that the book which was admitted in this case was incompetent and inadmissible; and that, consequently, the verdict must be set aside, and a

*New trial granted.*